UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAYTON CANGELOSI | CIVIL ACTION |
| VERSUS | NO: 20-1991 |
| GOVERNOR JOHN BEL EDWARDS | SECTION: "A" (1) |

### ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction and Under Rule 12(b)(6) for Failure to State a Claim (Rec. Doc. 17)** filed by the defendant, John Bel Edwards, Governor of the State of Louisiana. The plaintiff, Clayton Cangelosi, opposes the motion. The motion, submitted for consideration on October 14, 2020, is before the Court on the briefs without oral argument.[1] For the reasons that follow, the motion is granted.

**I.    Background**

This case involves a constitutional challenge to Emergency Proclamation 89 JBE2020, issued by the defendant, John Bel Edwards, Governor of the State of Louisiana, on July 11, 2020, in response to the COVID-19 pandemic. The Governor issued the Proclamation to implement additional mitigation measures in an effort to slow the spread of infection in Louisiana. Section 4 of the Proclamation is a Face Covering Order, referred to colloquially as a "mask mandate" (at times hereinafter "the Mask EP"). The Mask EP requires every individual in Louisiana to wear a "face covering over the

---

[1] The Court notes that oral argument has been requested but in light of the issues presented the Court is not persuaded that oral argument would be helpful.

1

nose and mouth when inside a commercial establishment or any other building or space open to the public, whether indoor or outdoor." (Rec. Doc. 17-2, Exhibit 1 at 3 § 4(A)). The Mask EP is subject to several exceptions or exemptions. The Mask EP obligates businesses and organizations to require all persons who enter their premises to wear a face covering unless one of the enumerated exemptions applies to the individual. Under the Mask EP's enforcement provision, businesses and organizations that fail to enforce the mask requirement are subject to written citations. *Id.* § 4(D). The state-wide mask mandate, however, does not allow for governmental enforcement against individuals who fail to comply with the mask mandate.

On July 13, 2020, the plaintiff, Clayton Cangelosi, proceeding *pro se*, filed this action against the Governor in his official capacity. Cangelosi contends that the state-wide mask mandate 1) constitutes an unconstitutional infringement on his liberty and privacy rights in violation of the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution (Count I), 2) violates his rights to freedom of speech and assembly and to petition his government under the First, Ninth, and Fourteenth Amendments to the United States Constitution (Count II), 3) constitutes an unconstitutional infringement of his fundamental right to travel in violation of the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution (Count III), 4) constitutes an unconstitutional infringement of his right to control his own body and to make his own health decisions by restricting his access to fresh air in public in violation of the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution (Count IV), and 5) violates state law (La. R.S. § 29:736(D)) (Count VI).[2]

---

[2] The Court has not skipped over Count V in the enumeration above. Count V of the original complaint was simply an invocation of 42 U.S.C. § 1983. Section 1983 "is not itself a source

Plaintiff seeks relief for the foregoing alleged violations of federal law pursuant to 42 U.S.C. § 1983 (Count V). Plaintiff also seeks declaratory and injunctive relief, asking the Court to declare the Mask EP to be unconstitutional and permanently enjoining its enforcement. Plaintiff also seeks damages in the amount of $1,500,000.00 for the emotional distress and humiliation of being asked to leave the premises of certain businesses and harassed in public places due to the mask mandate.

Defendant now moves to dismiss the complaint in its entirety arguing that the claims do not satisfy the requirements for Article III standing and that the claims are barred by the Eleventh Amendment. Should any of Plaintiff's claims survive those obstacles, Defendant argues that the facts alleged fail to state a claim for a violation of any right guaranteed by the Constitution.

## II. Discussion

Article III of the United States Constitution extends the judicial power of the United States to "cases" and "controversies." U.S. Const. art. III, § 2. It is now well-settled that Article III constitutes a constitutional limitation of federal court jurisdiction to actual cases or controversies. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. *Id.* The doctrine ensures that federal courts do not exceed their jurisdictional authority, and it does this by limiting the category of litigants empowered to maintain a lawsuit in federal court to seek redress for

---

of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Therefore, Count V is the means for vindicating the federal rights referenced in Counts I-IV; it does not constitute a separate basis for challenging the Mask EP.

a legal wrong. *Id.* (citing *Raines*, 521 U.S. at 820; *Valley Forge Christian Coll. v. Americans United for Separ. of Church & State, Inc.*, 454 U.S. 464, 473 (1982); *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).

The jurisprudence of the Supreme Court has established that standing consists of three elements: the plaintiff must have 1) suffered an injury in fact, 2) that is fairly traceable to the challenged conduct of the defendant (causation), and 3) that is likely to be redressed by a favorable judicial decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). The plaintiff who files a complaint in federal court, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). In order to satisfy this burden at the pleading stage the plaintiff must clearly allege facts to satisfy each element of Article III standing. *Id.* (quoting *Warth*, 422 U.S. at 518). Moreover, the plaintiff must demonstrate standing separately for each form of relief that he seeks. *Friends of the Earth*, 528 U.S. at 185 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

Even where the requirements of Article III standing are met, the sovereign immunity conferred on the states by the Eleventh Amendment further limits the grant of judicial authority found in Article III of the Constitution. *Pennhurst*, 465 U.S. at 98. The Eleventh Amendment bars federal suits against a state, state agency, or a state official in his official capacity unless that state has waived its sovereign immunity. *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 274 (5th Cir. 2020) (citing *Bryan v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015); *Cozzo v. Tangipahoa Par.*

*Council*, 279 F.3d 273, 280-81 (5th Cir. 2002)). A suit against a state official in his official capacity is not a suit against the official personally but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 1985)). As such an official capacity suit is no different than a suit against the state itself. *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Therefore, the Eleventh Amendment "generally precludes actions against state officers in their official capacities." *Cantu Servs., Inc. v. Roberie*, 535 Fed. Appx. 342, 344 (5th Cir. 2013) (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)).

An action against a state official in his official capacity may not be barred by the Eleventh Amendment if the doctrine recognized by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), applies. The *Ex parte Young* doctrine ensures that state officials do not "employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Cantu Servs.*, 535 Fed. Appx. at 344 (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 113 S. Ct. 684, 688 (1993)). For *Ex parte Young* to apply, the claim must be brought against a state official in his official capacity and the relief sought must be "declaratory or injunctive in nature and prospective in effect." *Id.* (quoting *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)); *Corn*, 954 F.3d at 274. Furthermore, the state official must be committing an ongoing federal violation. *Id.* Finally, the state official who has been sued must have some connection with the enforcement of the allegedly unconstitutional law. *Mi Familia Vota v. Abbott*, ---

F.3d --- , No. 20-50793, 2020 WL 6058290, at *4 (5th Cir. Oct. 14, 2020) (citing *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)).

Although standing is a jurisdictional issue and therefore should be resolved before considering more substantive issues, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 616 (1973), this case involves claims against a state official—the Governor of Louisiana—in his official capacity. As such, the Eleventh Amendment presents an obstacle to all aspects of Plaintiff's claims against the Governor. First, the claim against the Governor for monetary relief ($1,500,000.00) and any claims premised on violations of state law, whether statutory or constitutional, are dead on arrival without even considering the enforcement provisions of the Mask EP. Neither the claim for monetary relief,[3] which constitutes non-injunctive retrospective relief, *Corn*, 954 F.3d at 274, nor the claims premised on state law[4] fall within the *Ex parte Young* exception to Eleventh

---

[3] In addition to the insurmountable obstacle presented by the Eleventh Amendment, § 1983 does not allow for an award of damages against a state official in his official capacity to redress past conduct because the state is not a "person" in the context of such a claim. *Will*, 491 U.S. at 64. Consistent with the *Ex parte Young* exception to the Eleventh Amendment a state, and hence a state official in his official capacity, is a "person" under § 1983 when sued for prospective injunctive relief. *Id.* at 71 n.10 (citing *Graham*, 473 U.S. at 167 n.14; *Ex parte Young, supra*). Thus, even if the claim for damages was not absolutely barred by the Eleventh Amendment, and even if it were justiciable vis à vis the Governor as an Article III case or controversy, it would be subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Moreover, Plaintiff's claim for such an exorbitant amount of damages appears to be linked to the manner in which employees of private businesses have dealt with his attempts to enter their premises without a face covering. As Judge Vance recently pointed out when dismissing Plaintiff's claims against Jefferson Parish President Cynthia Lee Sheng, the allegedly abusive private conduct that the plaintiff is complaining about is not fairly traceable to Sheng, and it is certainly not traceable to Governor Edwards. *Cangelosi v. Sheng*, No. 20-1989, 2020 WL 5960682, at *4 (E.D. La. Oct. 8, 2020). And like the Jefferson Parish mask mandate, abuse and harassment are neither required by the Mask EP or a natural consequence of it.

[4] In addition to the insurmountable obstacle presented by the Eleventh Amendment, § 1983 is only a remedial vehicle for violations of *federal* statutory and *federal* constitutional rights. *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) (citing *Beltran v. City of El Paso*, 367

6

Amendment immunity, *Pennhurst*, 465 U.S. at 106 (1984) (recognizing that *Ex parte Young* only applies to claims premised on federal law); *Corn*, 954 F.3d at 275. As to the damages claims and state law claims the Eleventh Amendment bar is absolute and insurmountable. Thus, for those claims any discussion of standing or whether the plaintiff has pleaded a plausible claim for relief would be mere didactic exercises.

    Second, as to the remainder of Plaintiff's claims, *i.e.*, those premised on federal law for which the relief sought is injunctive and prospective in nature, the Eleventh Amendment also presents an obstacle for the following reasons. For the *Ex parte Young* exception to the Eleventh Amendment to apply, the state official that the plaintiff is seeking to prospectively enjoin must be responsible for or at least have some connection to the enforcement of the allegedly unconstitutional law. Referring to the specific provisions of the Mask EP, it becomes obvious that the Governor does not enforce the Mask EP—rather enforcement is carried out by the State Fire Marshal and the Governor's Office of Homeland Security and Emergency Preparedness. (Rec. Doc. 17-2, Exhibit 1 at 4 § 5). Thus, even if the Mask EP were violative of some federal right, an injunction issued against the Governor would not alleviate the violation of any right guaranteed under federal law because the Governor does not enforce the mandate against anyone including the plaintiff herein. Therefore, the essence of the injunction that Plaintiff seeks is one in which a federal court coerces the state's executive into

---

F.3d 299 (5th Cir. 2004)). Violations of state law are not cognizable under § 1983 unless those violations also implicate a right guaranteed by federal law. *See id.* Thus, even if the state law claims were not absolutely barred by the Eleventh Amendment, and even if they were justiciable vis à vis the Governor as an Article III case or controversy, the § 1983 claims premised on state law would be subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

7

countermanding an executive order issued under state law. *Ex parte Young* does not permit a federal court to take such action against the Governor and the exception does not save the remainder of Plaintiff's claims from the reach of the Eleventh Amendment.[5]

Given however that the Mask EP is enforced by state officials who are within the executive branch of state government, and may very well be answerable to the Governor at some level, one may argue that even without a direct enforcement role the Governor has a "sufficient connection" with enforcement to open the door to the *Ex parte Young* exception to Eleventh Amendment immunity, at least insofar as the claims premised on federal law for which the relief sought is injunctive and prospective in nature are concerned. *See Mia Familia Vota*, 2020 WL 6058290, at *4 (citing *In re Abbott*, 956 F.3d at 708). But for those claims even if they escape Eleventh Amendment immunity, they fail based on Article III standing and the plaintiff's failure to state a claim upon which relief can be granted.

As to standing, because the Court must liberally construe a pro se litigant's pleadings, *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007), the Court will assume that the "injury" at issue for purposes of standing is not the monetary damages for distress and humiliation that crept into this case via the plaintiff's amended prayer for relief (Rec. Doc. 9)—injury

---

[5] As discussed below, aside from *Ex parte Young*, the lack of efficacy of an injunction against the Governor in his official capacity also has ramifications for Article III standing.
  So that Plaintiff will not second guess the wisdom of suing the Governor in his official capacity only, the Court points out that because the Governor does not personally enforce the Mask EP and has had no personal involvement in any of the alleged deprivations that the plaintiff has sued upon, no claim against him would lie in his individual capacity. *See Henley v. Simpson*, 527 Fed. Appx. 303, 307-08 (5th Cir. 2013) (unpublished) (explaining the folly of trying to evade the Eleventh Amendment by suing a state official in his individual capacity for claims that are actually official capacity claims).

8

allegedly committed by third parties that have no connection to the sole defendant in this case—but rather the alleged violation of Plaintiff's federal constitutional rights when business owners refuse to allow him to enter without wearing a face covering. In order to move past the injury in fact element of standing, the Court will ignore two not insignificant facts: the Mask EP itself cannot be and has never been enforced against the plaintiff by the only governmental actors authorized to enforce it; and the private business owners whose conduct the plaintiff is complaining about are not governmental actors whose conduct is limited by the Constitution. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Assuming solely for the sake of argument that the plaintiff has pleaded an injury in fact chargeable to the sole defendant in this case, the standing requirements of causation and redressability remain problematic. The private businesses that have and will continue to enforce the Mask EP against the plaintiff are independent actors not before the Court and they are the parties that are directly regulated by the Mask EP. *See Inclusive Communities Proj., Inc. v. Dep't of Treasury*, 646 F.3d 649, 655-56 (5th Cir. 2019) (quoting *Lujan,* 504 U.S. at 562). As the defendant has pointed out, a private business may refuse service to any person for any non-discriminatory reason, *e.g.*, "No Shirt, No Shoes, No Service." (Rec. Doc. 17-1, Memorandum in Support at 10). Thus, while Plaintiff may question the efficacy of face coverings in preventing the spread of COVID-19, the owners of private businesses may not feel the same way. With or without the Mask EP being in effect, those business owners might very well require a face covering before entering their premises both for the protection of their employees and for the protection of their other patrons who might otherwise be disinclined to enter

the premises if a face covering is not required. And even if this Court had some basis to legitimately enjoin enforcement of the mask mandate, which it does not, those business owners could very well continue to require the plaintiff to don a face covering before entering their premises. The proposition that an injunction against the Governor would relieve the plaintiff of having to wear a face covering in order to enter certain businesses is highly speculative. *Inclusive Communities Project*, 946 F.3d at 655 (explaining that redressability requires a showing that it is *likely* not just merely *speculative* that the injury will be redressed by a favorable decision). Thus, the causation and redressability elements of standing are not met here.[6]

But even if Plaintiff could escape the obstacles presented by the Eleventh Amendment and problems with Article III standing, at the end of the day he fails to state a claim for relief under any legal theory because even if the business owners could be considered state actors for the purpose of requiring the plaintiff to wear a face covering, a specious proposition at best, the face covering requirement does not violate any right guaranteed by federal law. Simply, the claims grounded on violations of the Constitution and federal law are legally frivolous for the reasons explained by Judge Vance in her

---

[6] Plaintiff's case for causation is further weakened by the fact that the facts pleaded demonstrate that the businesses that the plaintiff is complaining about are taking an even tougher stance on face coverings than what the Mask EP requires. The mask mandate is subject to several exceptions or exemptions including "[a]ny individual with a medical condition that prevents the wearing of a face covering." (Rec. Doc. 17-2, Exhibit 1 at 3 § 4(B)(3). Plaintiff complains that some business do not accept his assertion that a medical condition of his should exempt him from the face covering requirement, (Rec. Doc. 23, Opposition at 2), but the Mask EP provides that "[o]perators of businesses and organizations are entitled to rely on the representations of their customers, patrons, or employees regarding whether or not they qualify for an exception from the face covering requirements." (Rec. Doc. 17-2, Exhibit 1 at 3 § 4(D)). Thus, if business owners have offended the plaintiff's sensibilities by questioning his claim to a medical exemption they have not done so because of any coercion from the Governor or the Mask EP itself. Nothing prevents them from taking more onerous steps than what the Mask EP would require.

Order and Reasons addressing the same constitutional claims against Jefferson Parish President Sheng in conjunction with the parish's mask mandate. *Cangelosi v. Sheng*, No. 20-1989, 2020 WL 5960682, at *4 (E.D. La. Oct. 8, 2020).

Aside from the fatal flaws in his case that have already been discussed, Plaintiff simply ignores that when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by fundamental law." *In re Abbott*, 954 F.3d at 784 (quoting *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 31 (1905)). The Supreme Court's *Jacobson* decision instructs that all constitutional rights may be reasonably restricted to combat a public health emergency. *Id.* at 786. Thus, even if the facts pleaded had raised a plausible inference that a right guaranteed under federal law might be implicated by the Mask EP, Plaintiff cannot overcome the *Jacobson* hurdle, notwithstanding his own questioning of the efficacy of face coverings vis à vis COVID-19.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction and Under Rule 12(b)(6) for Failure to State a Claim (Rec. Doc. 17)** filed by the defendant, John Bel Edwards, Governor of the State of Louisiana is **GRANTED**. The complaint is **DISMISSED** in its entirety as follows: All

claims premised on federal law are dismissed with prejudice; all claims premised on state law are dismissed without prejudice.[7]

November 3, 2020

_____
UNITED STATES DISTRICT JUDGE

---

[7] The Court creates a distinction for purposes of the nature of the dismissal because the Court is clearly without jurisdiction to adjudicate a state law claim against the Governor in his official capacity, whereas the federal law claims fail for reasons beyond jurisdiction.